NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| Tonya COLEMAN, *on behalf of Carlos COLEMAN*, | : : : : | |
| Plaintiff, | : : | Civil No. 15–6484 (RBK) |
| | : | **OPINION** |
| v. | : : | |
| COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant. | : : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Tonya Coleman ("Plaintiff") on behalf of her son, Carlos Coleman ("Claimant"), for review of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Claimant's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **VACATED** and **REMANDED.**

**I.      BACKGROUND**

Plaintiff, on behalf of her son, applied for SSI benefits on February 5, 2010, alleging an onset date of disability beginning on June 1, 2000, due to seizures, attention deficit hyperactivity disorder ("ADHD"), and a learning disorder. Administrative Record ("R.") at 21. Claimant was born on July 18, 1997. *Id.* at 19. At the time of filing, Claimant was twelve years old; he is currently an adolescent. *Id*. Plaintiff's claim was denied after initial review on August 5, 2010,

1

and again after reconsideration on February 5, 2011. R. at 153–55, 159–62. On April 8, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 163–64. ALJ Frederick Timm denied benefits on March 13, 2012. *Id*. at 123–45. On May 8, 2012, Plaintiff filed a Request for Review by the Appeals Council, which issued a remand order on May 30, 2013. *Id*. at 146–50, 187.

ALJ Mark G. Barrett presided over a second administrative hearing held on October 9, 2013. *Id*. at 77–120. The ALJ issued a decision on March 5, 2014, again denying Plaintiff's claim. *Id*. at 13–37. Plaintiff filed a Request for Review by the Appeals Council on March 13, 2014. *Id*. at 12. The Appeals Council denied Plaintiff's Request for Review on June 28, 2015, and the ALJ's March 5, 2014 denial became the Commissioner's final decision. *Id*. at 1–6. Accordingly, the relevant period is from February 5, 2010, the date the application was filed, through March 5, 2014, the date of the ALJ's final decision. *Id.* at 30.  Plaintiff filed her Complaint in this Court on August 28, 2015, appealing the Commissioner's decision to deny SSI benefits to Claimant (Doc. No. 1.)

      A.      **Claimant's Alleged Impairments**

Plaintiff testified that at the time of the second administrative hearing, Claimant suffered from an epileptic disorder as well as ADHD. R. at 87–89. Claimant has been diagnosed with a complex partial seizure disorder, ADHD, and a learning disability. *See, e.g.*, *id*., at Exhibits 1F, 4F, 14F–15F. According to Plaintiff's testimony, the seizures are controlled by medication. *Id*. at 83, 87. Since the filing date, Claimant has not had regular seizures. *See, e.g.*, *id.* at Exhibits 13F–15F, 38F–40F.

Claimant has an Individualized Education Program ("IEP") to address his needs. According to school records, he is communication impaired. *Id*. at 439–59. Eileen Clark,

Claimant's special education teacher, evaluated Claimant's comprehension skills at about a second or third grade reading level. *Id.* at 495. Plaintiff alleges that Claimant has extensive behavioral issues. Pl.'s Br. at 5–6. Claimant receives three to five out-of-school suspensions per year, and he is frequently called in for behavioral issues. R. at 57, 60.

### B.     The ALJ's Decision

Under the Social Security Act, an individual defined as "disabled" is eligible for SSI benefits. 42 U.S.C. §1382(a). Under the Act, "an individual under the age of eighteen" is disabled if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ evaluates a minor's claim for SSI benefits using a three step process. 20 C.F.R. § 416.924(a). At step one, the ALJ assesses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R § 416.924(b). If so, the claimant is not disabled and, thus, the process ends. *Id*. If not, the ALJ proceeds to step two and determines whether the claimant has a medically determinable impairment that is severe, or a combination of impairments that are severe. 20 C.F.R. § 416.924(c). If not, then the claimant is not disabled. *Id*. If the ALJ determines that the claimant does have such an impairment or combination of impairments, then he proceeds to step three. *See id.* At step three, the ALJ determines whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(d).

When determining functional equivalence, the ALJ analyzes the impairment, or combination of impairments, in regards to six domains. *See* 20 C.F.R. § 416.926a(b)(1)(i)–(vi).[1] To functionally equal a listed impairment, the claimant must have either a "marked" limitation in two domains, or an "extreme" limitation in one domain.[2] 20 C.F.R. § 416.926a(d). When evaluating functional equivalence, the ALJ considers "all the relevant factors . . . ." *See* 20 C.F.R. § 416.926a(a).

The ALJ must also evaluate functional equivalence using the "Whole Child" Approach. SSR 09-1p; *see also* 20 C.F.R. § 416.926a(b)–(c). Under this approach, it is the duty of the ALJ to (1) identify all of the activities the child engages in and the domains associated with each activity, (2) determine whether the child's impairment(s) cause limitations in these activities, and (3) rate the severity of the limitations and determine whether the impairment(s) functionally equals the listings. *See* SSR 09-1p.

First, the ALJ found that Claimant was a school-aged child on February 5, 2010, the date the application was filed, and an adolescent on March 5, 2014, the date of the hearing. R. at 19. As such, the ALJ applied the three-step process set out by 20 C.F.R. § 416.924. *See id.* At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date, February 5, 2010. *Id.* At step two, the ALJ determined that Claimant suffers

---

[1] The six domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; or (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi).

[2] A "marked" limitation is one which "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Such a limitation is "'more than moderate' but 'less than extreme.'" *Id.* An "extreme" limitation is one which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

from the following severe impairments: a complex partial seizure disorder, a learning disorder, and ADHD. *Id*.

At step three, the ALJ determined that Claimant does not have an impairment, or combination of impairments, that meets or medically equals a listed impairment. *Id*. In his evaluation, the ALJ considered Claimant's learning disorder and seizures pursuant to Listings 111.03 and 112.02, and he considered Claimant's ADHD pursuant to 112.11. *Id.* at 19–20. The ALJ found no evidence that Claimant's impairments, or combination of impairments, meets or medically equals any of these listings. *Id*.

The ALJ went on to state that he analyzed Claimant under the "Whole Child" Approach and determined that Claimant's impairments, or combination of impairments, do not functionally equal the severity of a listed impairment. *Id*. at 20. The ALJ found marked limitations in one domain: Claimant's ability to interact and relate with others. *Id*. at 27. The ALJ found less than marked limitations in four domains: acquiring and using information, attending and completing tasks, caring for himself, and health and physical well-being. *Id*. at 24–26, 29–30. Finally, the ALJ found no limitation in the domain of moving about and manipulating objects. *Id*. at 28. Based on his analysis and findings, the ALJ concluded that Claimant had not been "disabled" during the relevant period.

## II.     STANDARD OF REVIEW

After reviewing the Commissioner's final decision and the administrative record as a whole, this Court is limited to determining whether the decision was supported by substantial evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (citing 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for

the standard is: substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The ALJ concluded that the Claimant was not disabled and therefore not entitled to SSI benefits at any point during the relevant time period. R. at 30. This Court finds that the ALJ failed to adequately evaluate Claimant under the "Whole Child" Approach. Accordingly, the Commissioner's decision will be vacated and remanded for reconsideration consistent with this Opinion.

### A. Medical Evidence of Record

Plaintiff argues that the ALJ failed to properly weigh and evaluate the evidence in the record. Pl.'s Br. at 6–7. Specifically, Plaintiff argues three main points: (1) the ALJ failed to consider all medical evidence by neglecting to identify Listing 112.05; (2) the ALJ improperly rejected Claimant's IQ score obtained by Dr. Goldberg; and (3) the ALJ did not properly apply the "Whole Child" Approach according to SSR 09-1p or support his decision with substantial evidence. *Id.* at 6–15.

### 1. Listing 112.05

Plaintiff first contends that the ALJ committed harmful error by failing to consider Medical Listing 112.05 when evaluating if Claimant's impairments meet or medically equal a listed impairment. *See* Pl.'s Br. at 8. In his evaluation, the ALJ only stated three listings which he considered in relation to Claimant's impairments: Listings 111.03, 112.02, 112.11. R. at 19–20. Plaintiff contends that the ALJ failed to consider Listing 112.05, and that the record supports a finding of disability pursuant to Listing 112.05(D) and (E). Pl.'s Br. at 8–9.

An impairment "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). The ALJ is not required to adhere to either specific language or a specific format when conducting his analysis. *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 Fed. Appx. 158, 162 (3d Cir. 2012); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). Rather, there must be "sufficient development of the record and explanation of findings to permit meaningful review." *T.C. ex rel. Z.C.*, 487 Fed. Appx. at 162 (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). During his analysis, the ALJ is not required to identify or analyze even the most relevant listing. *Wisniewski v. Comm'r of Soc. Sec.*, 210 Fed. Appx. 177, 180 (3d Cir. 2006)

7

(citing *Scatorchia v. Commissioner of Soc. Sec.,* 137 Fed. Appx. 468, 471 (3d Cir. 2005) (finding that the administrative law judge met the requirement from *Jones* at step three without identifying the relevant Listing)).

This Court finds that the failure to analyze Listing 112.05 does not constitute harmful error. "The claimant must provide sufficient medical evidence in step three to show that [his] impairment is equal in severity to a listed impairment . . . ." *Rivera v. Comm'r of Soc. Sec.*, 164 Fed. Appx. 260, 262 (3d Cir. 2006) (citing *Burnett,* 220 F.3d at 120 n.2). Plaintiff argues that Claimant met the requirements of Listings 112.05(D) and (E). Pl.'s Br. at 8–9. In both of these Listings, a claimant must have a full-scale IQ of 60 through 70. 20 C.F.R. Part 404, Subpart. P, App. 1, § 12.05.

Plaintiff relies on the November 5, 2013 examination done by Dr. Kenneth Goldberg. Pl.'s Br. at 8. Plaintiff and the ALJ incorrectly state that Dr. Goldberg assessed Claimant as having a full-scale IQ of 67. *Id*. at 8; R. at 22. The examination was conducted using the Wechsler Intelligence Scale for Children - Fourth Edition (WISC-IV). R. at 1081. The IQ of 67 that Plaintiff points to falls under the column titled "Sum of Scaled Scores." *Id*. However, the correct usage of the WISC-IV examination is to read results in terms of the Composite Score. *See Green ex rel. K.C.G. v. Astrue*, 2011 WL 1440363, at *4 (M.D. La. Feb. 15, 2011), *report and recommendation adopted sub nom. Green v. Astrue*, 2011 WL 1456218 (M.D. La. Apr. 14, 2011) (collecting cases). Further, the chart that Plaintiff and the ALJ pulled the full-scale IQ from is labeled "Composite Scores Summary," and in Dr. Goldberg's summary of the results, he makes explicit reference only to the composite scores and how they equated into a qualitative description of the results. R. at 1081–82. Lastly, Plaintiff points to no further evidence in the record to support their claim. *Shinseki v. Sanders*, 556 U.S. 396, 398 (2009) ("The burden of

showing harmfulness is normally on the party attacking an agency's determination"); *see also Rivera,* 164 Fed. Appx. at 263 (holding that an "ALJ's conclusory statement in step three was harmless" where there was "abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"). As such, remand is not appropriate on this basis. *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466–67 (E.D. Pa. 2012) (citing *Rutherford,* 399 F.3d at 553) ("Where the error by the ALJ is harmless and would not affect the outcome of the case, remand is not warranted.").

### 2. Claimant's IQ Score from Dr. Goldberg

In his decision, the ALJ declared that he accepted the IQ score from the Lindenwold School District, and rejected the score from Dr. Goldberg. The ALJ stated that he accepted the former because it was done for the purpose of assessing Claimant's need for special education services, whereas the latter was related to Claimant's SSI application. R. at 22. Although the ALJ failed to properly explain his reasoning for this rejection and failed to properly assess Claimant's credibility, it does not constitute harmful error. As noted above, both Plaintiff and the ALJ misinterpreted the results of the WISC-IV evaluation. When read properly, Claimant has a full-scale IQ of 75. *Id*. at 1081. Therefore, using either the IQ score of 75 from the WISC-IV evaluation, or the IQ score of 84 from the WASI evaluation, Claimant does not meet the requirements of Listing 12.05(D) or (E). *Id*. at 540, 1081; 20 C.F.R. Part 404, Subpart. P, App. 1, § 12.05.

### 3. The "Whole Child" Approach

Plaintiff contends that the ALJ failed to properly apply the "Whole Child" Approach at step three because he failed to evaluate the impact that all of Claimant's severe impairments have on his ability to function. Pl.'s Br. at 11. Further, Plaintiff contends that the ALJ, in his decision,

9

failed to support his determination with facts from the record. *Id*. According to Plaintiff, the ALJ merely stated conclusions about Claimant's functional limitations, despite record evidence indicating the opposite. *Id*. at 11–15.

SSR 09-1p states that when evaluating a child for functional equivalence to a listed impairment, the ALJ must evaluate the "Whole Child." SSR 09-1p. Under this approach, the ALJ assess a child's activities and evaluates "how appropriately, effectively, and independently [the child] perform[s] [their] activities compared to the performance of other children [the same] age who do not have impairments." 20 C.F.R. § 416.926a(b); *see also* SSR 09-1p. First, the ALJ identifies all of the activities the child engages in and the domains associated with each activity. SSR 09-1p. Next, the ALJ considers whether the child's impairments cause limitations in these activities. *Id*. Finally, once the ALJ has determined "which of a child's activities are limited, which domain or domains are involved, and that the limitations are the result of a medically determinable impairment(s), [the ALJ] rate[s] the severity of the limitations and determine whether the impairment(s) functionally equals the listings." *Id*. However, in making his determination, the ALJ is not required to discuss "all of the considerations . . . in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." *Id*.

Further, in making his decision, the ALJ must consider all "relevant information in [the] case record . . . ." 20 C.F.R. § 416.926a(e)(1)(i). An "[ALJ's] findings should be as comprehensive and analytical as feasible and . . . should include a statement of subordinate factual foundations on which ultimate factual conclusions are based . . . ." *Fargnoli*, 247 F.3d at 41 (citing *Cotter*, 642 F.2d at 704). These findings are made so "a reviewing court may know the basis for the decision." *Id*.  However, it is important for the ALJ to not just simply express the

10

information that he considered which supports his determination, but also to make some "indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Without some indication of what evidence was rejected, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*.

After reviewing both the record of evidence, and the decision of the ALJ, the Court is not satisfied that the ALJ met his burden of sufficiently detailing how he came to his conclusions. First, the ALJ stated early in his opinion that he "evaluated the 'whole child' in making [his] findings regarding functional equivalence." R. at 20. The Social Security Administration "has provided examples of typical functioning in several age categories to use as a frame of reference to determine whether a child is functioning typically for his or her age." *Tusing*, 2014 WL 5493191, at *9 n. 1 (citing 20 C.F.R. § 416.926a). The ALJ stated these examples in his evaluation of each of the six domains, but applied no evidence from the record to even a single example.

Further, when evaluating the effects that a claimant's impairments have on their functioning, the ALJ is to consider how much help the claimant receives from "family, teachers, or others." 20 C.F.R. § 416.924(a)(b)(3)(i). The ALJ is also to consider the effect that structured and supportive settings have. 20 C.F.R. § 416.924a(b)(5)(iv). A structured or supportive setting can be a regular classroom, in which the claimant receives accommodation, or a "special classroom." 20 C.F.R. § 416.924a(b)(5)(iv)(B). This kind of setting is considered because it "may minimize signs and symptoms of [a claimant's] impairment(s) and help to improve [their] functioning while [they] are in it," however, outside of this setting, their "signs, symptoms, and functional limitations may worsen . . . ." 20 C.F.R. § 416.924a(b)(5)(iv)(C). Therefore, an ALJ must consider a claimant's "need for a structured setting and the degree of limitation in

11

functioning [they] have or would have outside the structured setting." *Id*. "Even if [a claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [they] would continue to function at an adequate level without the structured or supportive setting." *Id*.

In his decision, the ALJ cited to numerous instances in the record that show that Claimant "receives in-class support from a special education teacher." R. at 21. The ALJ further mentions the questionnaires of Claimant's special education teachers who list the numerous problems Claimant has in functioning in his special education classes. *Id*. at 23. However, despite explicitly stating these facts, the ALJ makes no findings on Claimant's need for the structured settings, nor on how Claimant would function without the continued support of his special education teachers. Although the ALJ states that Claimant testified that his grades are "As, Bs, with one C," he also states that Claimant "struggled with grades throughout high school and required in-class and one-on-one help for certain subjects." *Id.* at 21, 25. Claimant's teachers noted that Claimant had "great difficulty working by himself" and that he receives daily aid. *See, e.g.*, *id*. at Exhibit 6E, 32E, 33E.

Because the ALJ failed to properly consider the effect that Claimant's structured setting and daily aid had on his functioning, the ALJ's decision is vacated and remanded for further consideration. *Dobrowolsky v. Califano*, 606 F.2d 403, 406–07 (3d Cir. 1979) ("This Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence."); *A.B. on Behalf of Y.F. v. Colvin*, 2016 WL 614409, at *6 (D.N.J. Feb. 16, 2016) (holding that the ALJ's failure to explicitly weigh the claimant's need for a structured setting made the case appropriate for remand); *see also Cruz v. Comm'r of Soc. Sec.*, 2009 WL

2448517, at *10 (D.N.J. Aug. 10, 2009) (remanding where the ALJ did not "explicitly consider the possibility that a structured or supportive setting . . . might have minimized the signs and symptoms of the plaintiff's impairment and helped to improve her functioning").

Because the ALJ failed to sufficiently apply the "Whole Child" Approach, this Court does not reach the question of whether the ALJ's decision is supported by substantial evidence.[3]

### B. Credibility Determinations

Plaintiff further contends that the ALJ failed to properly assess the credibility of both Claimant and Plaintiff in rendering his decision. Pl.'s Br. at 16. Specifically, Plaintiff contends that the ALJ failed to make proper findings of Claimant's and Plaintiff's statements regarding the limiting effects of Claimant's symptoms. *Id*. at 16–17.

Typically, "[a reviewing court] would ordinarily defer to an ALJ's credibility determination . . . ." *Reefer v. Barnhart,* 326 F.3d 376, 380 (3d Cir. 2003)). The "ALJ should state why some evidence was accepted and some was rejected." *Id.* The ALJ "may discount a claimant's testimony if it is inconsistent with other evidence." *Id*. (citing *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999)). It is the opinion of this Court that the ALJ adequately developed his rationale for rejecting both Claimant's and Plaintiff's statements. Plaintiff contends that the ALJ failed to address Plaintiff's credibility at all. Pl.'s Br. at 16. But in

---

[3] The Court notes that the ALJ purportedly gave great weight to all of the teacher questionnaires and stated that these evaluations are consistent with the record and a finding of less than marked limitations in several domains. R. at 22–23. The teachers, however, found in their evaluations that Claimant has both serious and very serious problems in many functional areas. *Id*. at 289, 488. Further, Claimant's IEP detailed his many struggles in class. *Id*. at 936. On remand, the Court recommends the ALJ more clearly explain his conclusion. *See Vargas ex rel. B.L.D.T.V. v. Colvin*, 2013 WL 6231267, at *11 (E.D. Pa. Dec. 2, 2013) (finding that because the ALJ's depiction of the evidence and the actual content of the evidence did not seem to match, the ALJ must re-evaluate whether Plaintiff functionally equaled a listing).

the ALJ's decision, he explicitly states that "the statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not entirely credible for the reasons explained below." R. at 21. The only statements made about the intensity, persistence, and limiting effects of the symptoms were by the Claimant and Plaintiff. Further, in the ALJ's analysis of the credibility of these statements, he explicitly referred to Plaintiff's testimony. *Id*. The ALJ then spent three pages addressing the medical records, education records, and the responses from Claimant's teachers. *Id*. at 21–23. The ALJ therefore adequately supported his credibility decision.

### C. Summary Judgment

Plaintiff argues that the record provides sufficient basis for an award of summary judgment in favor of Claimant. Pl.'s Br. at 17–18. The "proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura,* 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart,* 367 F.3d 882, 886–87 (9th Cir. 2004) (asserting that, in a Social Security disability case, remand is appropriate in most circumstances). The Plaintiff has not provided sufficient reason for this Court to deviate from the typical course of remand.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and **REMANDED.**

Dated:  08/09/2016                                                                                  s/ Robert B. Kugler

                                                                                 ROBERT B KUGLER

                                                                                 United States District Judge